**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AARON CHASE SANDERS,**<br><br>**Defendant.** | **Case No. 26-CR-117-JDR** |

**Government's Trial Brief**

The United States government respectfully submits its brief for trial in this case.

**Index**

Status of the Case ....................3

I. Charge in the Superseding Indictment and Relevant ....................4

a) The Superseding Indictment. ....................4

b) Relevant Statutes ....................4

II. Summary of Facts ....................5

III. Legal and Evidentiary Issues ....................8

1. Witness Exclusion & Case Agent Designation....................8

2. Expert's use of a PowerPoint ....................9

3. References to the potential punishment following a conviction....................9

4. Non-pertinent characteristics and background....................10

5. Proof that the Children Depicted in the Child Pornography are Real and Underage....................11

6. The AI morphed image qualifies as Child Pornography. . ....................12

7. Statements by a Party Opponent................................................13

8. Non-Hearsay Statements Offered for the Effect on the Listener............14

9. Sanders' out-of-court statements to Telegram in 2024........................15

10. Det. Francis' anticipated testimony..............................................16

11. Electronic Evidence Issues ............................................................17

A. Authenticity ..............................................................................17

B. Hearsay Issues ............................................................................19

12. Chain of Custody. .........................................................................20

13. *Res Gestae*, Rule 414, and Rule 404(b) Evidence.........................................20

III. Conclusion ................................................................................21

## Status of the Case

**Trial Date:** August 3, 2026, at 9:00 a.m., before the Honorable John D. Russell, United States District Judge.

**Estimated Time for Trial:** 2–3 days.

**Status of Defendant:** In custody.

**Waiver of Trial by Jury:** None.

**Interpreter:** None required.

**Potential Witness List:** The government anticipates calling eight witnesses for its case-in-chief.

1. Destiny Unger
2. Officer Nathan Siens, Tulsa PD
3. Det. Jay Francis, Bixby PD
4. Bailey Sanders
5. Jade Cantu
6. Karelia Shreve
7. Sgt. Sebastian Duque, Glenpool PD
8. CFA Anthony Meter, HSI

**Expert Witnesses:** CFA Anthony Meter, HSI

**Exhibit List:** The government plans on admitting 10 exhibits (with sub-exhibits) in its case-in-chief:

1. Video of conversation with Destiny Unger
2. Screenshots of conversation with Destiny Unger
3. Recorded Interview of Defendant
4. Physical phone (Apple iPhone 16)
5. Child Pornography/Child Pornography metadata
6. Original photo of Bailey Sanders and MV
7. AI morphed video of Bailey Sanders and MV
8. Report of messages with Jade Cantu
9. Report of messages with Karelia Shreve
10. PowerPoint created by Anthony Meter

An exhibit list will be provided as required by local rules.

**Requested Time for Opening Statement:** The government requests 10 minutes for its opening statement.

## I. Charge in the Superseding Indictment and Relevant Statutes

### *A. The Superseding Indictment charges that:*

From on or about September 22, 2025, to on or about January 4, 2026, in the Northern District of Oklahoma and elsewhere, the defendant, Aaron Chase Sanders, knowingly possessed and knowingly accessed with intent to view any book, magazine, periodical, film, videotape, computer disk, and any other material that contained an image of child pornography that has been mailed, shipped, and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer. At least one image of child pornography involved a prepubescent minor and a minor who had not attained 12 years of age.

All in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2).

### *B. Relevant Statues:*

Title 18, United States Code, Section 2252A(a)(5)(B) prohibits Possession of Child Pornography, and provides, in relevant part:

a) Any person who— (5) either — (B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape,

> computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

Title 18, United States Code, Section 2252A(b)(2) describes the penalties for a violation of Possession of Child Pornography, and provides, in relevant part:

> (2) Whoever violates, or attempts or conspires to violate, subsection (a)(5) shall be fined under this title or imprisoned not more than 10 years, or both, but, if any image of child pornography involved in the offense involved a prepubescent minor or a minor who had not attained 12 years of age, such person shall be fined under this title and imprisoned for not more than 20 years, or if such person has a prior conviction under this chapter, chapter 71, chapter 109A, or chapter 117, or under the Uniform Code of Military Justice or the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

**II. Summary of Facts**

On January 3, 2026, Tulsa Police Department Officer Nathan Siens received a dispatch for a possible child molestation report. Officer Siens met with the reporting party, Destiny Unger, who informed him that she had been chatting with a man on Snapchat named “Aaron” with the username “Aroddd0501”. Unger told Officer Siens that she and “Aaron” had been messaging back and forth in sexual manner when “Aaron” brought up his young daughter who was turning three years old and started making comments about her that concerned Unger. She showed Officer Siens comments that “Aaron” made about his daughter including:

- Let’s just say her little hands…love to be wrappppped;

- Come over tonight and we can playyy with her;
- Fine. I'll just play with her pretty little pussy and let her spit on my cock without you;
- Fuck yes. Thinking of my little girl stroking it into your mouth or both of us licking her tight little ass pussy; and
- She loves to watch porn with me and stroke me to it.

Unger handed her phone to Officer Siens and he recorded the Snapchat conversation on his TPD cell phone. Officer Siens determined that "Aaron" was the defendant, Aaron Sanders, who lived in Bixby, Oklahoma. Officer Siens provided this information to the Bixby Police Department ("BPD"). A preservation for the Snapchat account was sent, and BPD gathered more information about Sanders, and they formed what they believed could possibly be a child rescue operation.

BPD Detective Francis was the detective on duty that day and after contact with DHS, discovered that Sanders was married with two children, a boy and girl. Close to midnight on January 3, 2026, BPD contacted Bailey Sanders, Aaron Sanders's estranged wife, who confirmed that Sanders had been at the house earlier that day, but was not currently present. BPD and DHS went to the home and conducted a welfare check on the children and spoke with Bailey. Bailey confirmed that Sanders was at the house earlier that day and that they alternated nights staying at the residence since they were going through a divorce. Bailey also told BPD that Sanders used a password that contained "lolita."

Det. Francis obtained a search warrant for Sanders' electronic devices and served the warrant on January 4, 2026. Sanders was transported to BPD for an interview. Det. Francis read Sanders his *Miranda* rights and Sanders admitted to sending the

Snapchat messages about his daughter to Unger. Sanders claimed that the messages were intended as "fantasy." Sanders also stated that "lolita" was a family-related name. Sanders was provided with a ride back to his car after the interview. BPD seized several electronic devices, including two cell phones, one of which was an Apple iPhone 16.

Det. Francis provided the devices to Glenpool Police Department Sergeant Sebastian Duque, who completed the initial extraction of the devices. Sgt. Duque flagged the Apple iPhone 16, that contained apparent child pornography and turned the extraction over to Det. Francis for further review. Det. Francis discovered images of child pornography; metadata showing that the child pornography images were connected to Telegram; emails to Telegram in 2024; conversations with two women, Jade Cantu and Karelia Shreve; evidence that Sanders had a Mega.nz account; and an AI morphed image of Bailey and Sanders' daughter performing oral sex on a male penis. Det. Francis submitted some of the images of child pornography to the National Center for Missing and Exploited Children, which confirmed that Sanders had 43 "known series."[1]

Det. Franics later spoke with both Jade Cantu and Karelia Shreve, who both confirmed that they previously met Sanders on a dating app and texted with him in a sexual manner, but grew disturbed over comments Sanders made about his young

[1] A "known series" refers to images of child sexual abuse material that NCMEC has identified the victim.

daughter. Both women eventually ended their contact with Sanders in December 2025, shortly before Unger reported him.

The extraction performed by Sgt. Duque and reviewed by Det. Francis was turned over to Computer Forensic Analyst Anthony Meter, HSI for expert review. CFA Meter confirmed that Sanders had an active presence in Telegram group chats that actively promoted child pornography. Through looking at the metadata, CFA Meter confirmed that Sanders had possessed and or interacted with images of child pornography found on his phone, the metadata showing that the child pornography traced back to different locations such as Twitter and Telegram. CFA Meter also confirmed the presence of the AI morphed video of Bailey and Sanders' daughter, ,with a created date of September 22, 2025.

## III. Legal and Evidentiary Issues

### ***1. Witness Exclusion & Case Agent Designation***

Pursuant to Federal Rule of Evidence 615, the government will move for the exclusion of all witnesses from the courtroom, except for witnesses designated as experts, until their testimony has been completed. The government will further move that it be permitted to designate Det. Jay Francis, with Bixby Police Department as the case agent and will request that the Court exempt him from the exclusion order pursuant to Rule 615(a)(2). The case agent should be exempted from any sequestration order because his knowledge of the facts of this case make him essential to counsel in understanding and presenting the case to the jury. The government will also request that CFA Anthony Meter, HSI, be exempt from the

exclusion order pursuant to Rule 615(a)(3). CFA Meter should be exempted from any sequestration order because the government intends on qualifying him as an expert and his presence is essential to presenting the government's case.

***2. Expert's use of a PowerPoint with evidence from the defendant's phone***

The government's expert witness, CFA Meter, will be discussing the defendant's phone extraction and the different types of metadata connected to the child pornography images on Sanders' phone. He will inform the jury on how this metadata supports that the phone belonged to Sanders and how Sanders either knowingly possessed or knowingly accessed with intent to view the images of child pornography. This PowerPoint will help the trier of fact understand the evidence and aid in their comprehension of the electronic evidence reviewed by law enforcement and the experts in this case and this aid is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 107. Additionally, there is good cause for this PowerPoint to go back to the jury during their deliberations as it will assist with clarity of the electronic evidence. *United States v. Harchegani*, No. CR 3:25-54-MGL, 2026 WL 1296048 (D.S.C. May 12, 2026).

***3. References to the potential punishment following a conviction should be prohibited***

This Court should preclude Sanders and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding potential penalties that Sanders faces if convicted.

Information about penalties draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromised verdicts, and

confuses the issues to be decided. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)); *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal.").

In federal court, the jury is not permitted to consider punishment in deciding whether the government has proved its case against Sanders beyond a reasonable doubt. *See* 10th Cir. Crim. Jury Instr. 1.04 and 1.20. Any such argument or reference would be an improper attempt to unduly influence the jury.

***4. Sanders should not be permitted to reference his non-pertinent characteristics and background***

Similarly, this Court should preclude Sanders and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding Sanders's finances, lack of criminal history, or other non-pertinent aspects of his personal background. Such evidence could improperly arouse the sympathy of the jury, and it should be excluded under the Federal Rules of Evidence 401, 402, and 403. To that end, the government requests that defense be precluded from "introducing" Sanders to the jury through the use of exhibits, testimony, or other references regarding Sanders' finances, or other non-pertinent aspects of his personal background. Rule 401 defines "relevant evidence" as "evidence having any tendency

to make the existence of any fact that is consequence to the determination of the action more probable or less probable than it would be without the evidence." "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Testimony about Sanders' finances, lack of criminal history, or personal background are of no consequence to the determination of any essential facts in this case and are thus irrelevant.

Moreover, the introduction of such evidence would violate Federal Rule of Evidence 403. That rule allows a court to exclude relevant evidence where the danger of unfair prejudice or confusion of the issues outweighs the probative value of such evidence. A trial court has wide latitude to exclude such prejudicial or confusing evidence. *United States v. Guardia*, 135 F.3d 1326, 1331–32 (10th Cir. 1998). The admission of such evidence would tend to "induc[e] decision on a purely emotional basis," in violation of Federal Rule of Evidence Rule 403. *See* Fed. R. Evid. 403 Advisory Committee Notes. Juries should not be influenced by sympathy. *See* 10th Cir. Crim. Jury Instr. 1.04. Thus, the Court should prohibit Sanders and his counsel from, while the jury is present, introducing any evidence, making any statement, or asking any questions regarding Sanders' finances, or other non-pertinent aspects of his personal background.

***5. Proof that the Children Depicted in the Child Pornography are Real and Underage***

An essential element of any child pornography case is that the individual depicted is in fact a minor. Sanders may assert as a defense that the children depicted in the images possessed by Defendant are "AI-generated" images, or that the persons depicted are not underaged. Should Sanders put forth such a defense, the

government is not required to put on an expert to testify that the unlawful images depict children. *See United States v. Charriez-Rolon*, 923 F.3d 45 (1st Cir. 2019) (The Court denied defendant's argument that "expert testimony" was needed for the jury to figure out the ages of the persons in the child pornography, holding that photos of the persons, and testimony from police about how defendant searched for images using terms like "youngsters" and "pedophilia," were sufficient for the jury to make a determination about the age of the persons depicted in the images). Nor is expert testimony required to show that the children depicted in the images are real. *See United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam) ("[T]he Government was not required to present any additional evidence or expert testimony to meet its burden of proof to show that the images downloaded by [defendant] depicted real children, and not virtual children. The district court, as the trier of fact in this case, was capable of reviewing the evidence to determine whether the Government met its burden to show that the images depicted real children."). Admitting the child pornography images themselves can be sufficient to satisfy this element. *See United States v. Vig*, 167 F.3d 443, 449-50 (8th Cir.), cert. denied, 528 U.S. 859 (1999)).

Ultimately, juries are capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge. *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003).

***6. The AI morphed image of Sanders' daughter qualifies as child pornography***

While Sanders possessed and/or accessed with intent to view, many other non-AI generated images that meet the definition of child pornography under 18 U.S.C. § 2256(8)(A), he also created and possessed a morphed AI image of his wife and daughter performing oral sex on a male penis. This morphed image meets the definition of child pornography under 18 U.S.C. § 2256(8)(C), as it is a visual depiction of an identifiable minor engaging in sexually explicit conduct. *United States v. Mecham*, 950 F.3d 257, 260–267. (5th Cir. 2020).

***7. Statements by a Party Opponent***

At trial, the United States will seek to admit statements and admissions made by Sanders related to the charge in this case by playing the recorded interview conducted by BPD case agent, Jay Frances. Sanders's statements in the audio recorded interview are statements made by a party-opponent and are admissible. Fed. R. Evid. 801(d)(2)(A) (statement that "is offered against an opposing party" and "was made by the party in an individual or representative capacity" is not hearsay even if that statement is offered for its truth). These statements are not hearsay—when offered by the United States. Fed. R. Evid. 801(d)(2)(A). The converse is not true. An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay. *Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false"). Accordingly, a defendant's attempt to elicit testimony concerning any self-serving hearsay is not admissible at trial.

### *8. Non-Hearsay Statements Offered for the Effect on the Listener*

Sanders's recorded statement also, necessarily, includes playing the statements of the other person in the room. Therefore, the Court should not exclude on hearsay grounds any statements made by Det. Francis during the recording. Those statements are not offered for the truth of the matter asserted but are instead offered for their effect on the listener and are *res gestae*.

Det. Francis's questions and statements to Sanders leading up to and in response to Sanders's statements and admissions are themselves not hearsay, because they are offered only for their effect on the listener and to provide context. *See United States v. Smalls*, 605 F.3d 765, 785 n.18 (10th Cir. 2010) (holding that the questions and comments of a confidential informant to a murder suspect about the murder were not hearsay when they were offered to show the effect on the defendant and provide context for the defendant's statements); *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir.1993) (recognizing that statements offered for their effect on the listener are not hearsay); *Creaghe v. Iowa Home Mut. Cas. Co.*, 323 F.2d 981, 984 (10th Cir. 1963) ("testimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement").

Moreover, Det. Francis' statements during his conversation with Sanders are admissible as res gestae. See *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (res gestae doctrine permits admitting evidence needed to "complete the story"). Simply stated, the context in which Sanders made statements to law enforcement regarding the messages he sent to Destiny Unger about his daughter are

important, as those statements are what led to the investigation in this case. Presenting the jury with only Sanders' statements would make little sense and would cause unnecessary confusion. *See Sanchez v. Duffy*, 416 F. Supp. 3d 1131, 1153-54 (D. Colo. 2018) (explaining that one reason to admit effect-on-the-listener evidence was that if jury heard only listener's reaction to the statements and not the statements themselves, "the story presented to the jury would be nonsensical").

Finally, the Court can mitigate any prejudicial effect with a limiting instruction. See *United States v. Garcia*, CR No. 09-2740 MCA, 2009 WL 10675919, at *4 (D. N.M. Dec. 15, 2009), aff'd, 635 F.3d 472 (10th Cir. 2011) (providing that the jury be instructed of the proper, non-hearsay use of statements admitted as effect-on-the-listener evidence); *see also United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (when document was admitted not for truth of the matter asserted but for a narrower purpose, "[t]he district court thus prudently instructed the jury that the document was 'being introduced for a limited purpose'").

Because the questions and statements made by Det. Francis during Sanders's recorded interview are not offered for the truth of the matter asserted but rather for their effect on the listener, and because the Court can give an appropriate limiting instruction, the Court should allow the jury to hear the full recordings of Sanders's interview.

***9. Sanders's out-of-court statements made in emails to Telegram in 2024 are not relevant to the current charge and are hearsay when they are offered by the Defendant***

Following a search of Sanders's cell phone, emails from 2024 were located in which Sanders communicated with an email address to Telegram, admin@telegram-group.org. *See* Dkt. # 21-1 – 21-10. It is anticipated that Sanders will seek to introduce his emails to Telegram to support his claim that he was a vigilante. First, these emails are from February – May 2024, which is well outside the current charged time period of the images possessed by Sanders from September 2025 – January 2026. Second, stating "I'm a vigilante" is not a defense to knowingly possessing or knowingly accessing with intent to view, child pornography. Therefore, these emails and statements relating to being a "vigilante" are not relevant for any fact of consequence at trial under Rule 401.[2]

Additionally, should Sanders seek to offer these out-of-court statements, whether by introducing the emails or by calling a witness (including himself) to testify about it, it would be inadmissible self-serving hearsay. *See* Fed. R. Evid. 801 and 802; *Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false").

***10. Det. Francis's anticipated testimony regarding his experience with child exploitation investigations is offered to explain the steps he took in the investigation of this case***

[2] There is an affirmative defense available under 18 U.S.C. § 2252A(d) if the defendant "possessed less than three images of child pornography; and promptly and in good faith…took reasonable steps to destroy such image; or reported the matter to a law enforcement agency and afforded that agency access to each such image." This affirmative defense does not apply to Sanders because he possessed over three images of child pornography and did not report the matter to law enforcement.

The government may elicit testimony from Det. Francis explaining why he took certain investigative steps. Such statements are not hearsay because they are offered to explain the investigation, not for the truth of the matter asserted. *See United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987) ("out of court statements are not hearsay when offered for the limited purpose of explaining why a Government investigation was undertaken").

The government is mindful that the use of such evidence should be limited. *United States v. Cass*, 127 F.3d 1218, 1222 (10th Cir. 1997). The government intends to introduce these statements in a narrow and limited fashion to put the investigation of this matter in the proper context, explain why certain investigative steps were taken, and rebut potential arguments raised by the defense.

***11. Electronic Evidence Issues***

At trial, the government will seek to admit electronic evidence obtained during the course of the investigation. The electronic evidence includes videos and photographs of suspected child pornography, metadata relating to the images of child pornography, data relating to the user of the device, as well as text messages obtained from Sanders' Apple iPhone 16 seized in this case. This evidence is admissible under the Federal Rules of Evidence.

***A. Authenticity***

The foundational "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). *See also*

*United States v. Dhinsa*, 243 F.3d 635, 658 59 (2d Cir. 2001) (noting Rule 901 "does not erect a particularly high hurdle," and that hurdle may be cleared by "circumstantial evidence") (quotations omitted). Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." *United States v. Chu Kong Yin*, 935 F.2d 990, 996 (9th Cir. 1991), cert. denied, 511 U.S. 1035 (1994); see also *Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 328 29 (3d Cir. 2005) ("Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic."). Once the threshold showing has been met to admit the document, any questions concerning the genuineness of the item normally go to the weight of the evidence.

Here, a witness familiar with the process used to obtain the materials and information from Sanders's seized devices will assist in authenticating the electronic evidence offered in this case. *See, e.g., United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir. 1997) (in conspiracy to distribute marijuana case, a computer seized from one defendant's residence contained computer records of drug transactions and the drug business; rejecting argument that government was required to supply a witness with personal knowledge of the computer system; agent testimony authenticated the computer printouts under Rule 901(a) including that the computer was seized during the execution of a warrant, the agent was present when the computer records "were

retrieved from the computer using the Microsoft Money program," and the agent "testified concerning his personal knowledge and his personal participation in obtaining the printouts"), *cert. denied*, 522 U.S. 1137 (1998).

Further, the government plans to use "chain of custody" testimony to establish how the government obtained items located on Sanders's device. *See, e.g., United States v. Salcido*, 506 F.3d 729, 733 (9th Cir. 2007) (per curiam) (in prosecution involving the possession and receipt or distribution of material involving the sexual exploitation of minors, "the government properly authenticated the videos and images under Rule 901 by presenting detailed evidence as to the chain of custody, specifically how the images were retrieved from the defendant's computers").

***B. Hearsay Issues***

Some of the electronic evidence exhibits contain non-hearsay. The courts have consistently held that machine-generated information is not hearsay as no "person" is making a statement. *See, e.g., United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005) (computer-generated "header" information (including the screen name, subject of the posting, the date the images were posted, and the individual's IP address) was not hearsay; no "person" acting as a declarant). However, if this information is a statement, they were made by Sanders, a party opponent. *See* Fed. R. Evid. 801(d)(2)(A). Additionally, some of the information the government intends to present under either Rule 414 or 404(b), are text messages Sanders sent to Jade

Cantu and Karelia Shreve.[3] The statements are not hearsay but are statements by a party opponent. *Id.* The statements by Cantu and Shieve are admissible as non-hearsay because their statements are not being used for the truth of the matter asserted, but rather effect on the listener.

***12. Chain of Custody***

The government will elicit testimony to describe the chain of custody of the devices seized from Sanders's vehicle during the execution of the search warrant. If evidence is "not readily identifiable and is susceptible to alteration by tampering," the party seeking admission must establish a chain of custody "with sufficient completeness to render it improbable that the original item has either been exchanged with another or been contaminated or tampered with." *United States v. Twaddle*, No. 20-2128, 2021 WL 5122282, at *4 (10th Cir. Nov. 4, 2021) (citing *United States v. Cardenas*, 864 F.2d 1528, (10th Cir. 1989)). But the chain of custody "need not be perfect." *Id.* As long as the chain of custody is sufficient, any deficiencies go to the weight of the evidence, not its admissibility. *Id.* The trial court "need only find that the reasonable probability is that the evidence has not been altered in any material aspect." *Id.* Further, "[t]here is no rule that the prosecution must produce all persons who had custody of the evidence to testify at trial." *Id.*

***13. Res Gestae, Rule 414, and Rule 404(b) Evidence***

[3] The Rule 414/404(b) issue is more fully discussed in another paragraph and in the government's sealed notice (Dkt. # 26).

The government filed our sealed notice of intent to use certain information pursuant to Rule 414 and 404(b). *See* Dkt. # 26. This information includes Sanders statements to Destiny Unger, Jade Cantu, and Karelia Shreve.

Sanders' statements to Unger should also be considered *res gestae* evidence. An uncharged act can be admissible as res gestae, "if it was inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without mention of the prior act." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010), citing *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994). "Evidence of other crimes should not be suppressed when those facts come in as res gestae- as part and parcel of the proof of the offense charged in the indictment." *Id.* Relevant *res gestae* evidence must meet the requirements of FRE Rule 403. The evidence must be excluded if its "probative value is substantially outweighed by a danger of …unfair prejudice." Fed. R. Evid. 403.

In this case, evidence of Sanders statements to Unger on January 3, 2026, are *res gestae* because it is so closely related to the charged offense, as Unger's report to law enforcement is what triggered the investigation. Admitting such evidence paints a more complete picture of the investigation and charged conduct.

## IV. Conclusion

This trial brief is offered to acquaint the Court with factual and legal issues which may arise at trial. The government requests that the Court grant it leave to submit additional memoranda if necessary.

Respectfully submitted,

CLINTON J. JOHNSON
UNITED STATES ATTORNEY

*/s/ Ashley Robert*

Ashley Robert, Texas Bar No. 24086955
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

**Certificate of Service**

I hereby certify that on the 27th day of July, 2026, I electronically submitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Kevin Adams
*Attorney for Defendant*

*/s/ Ashley Robert*
Ashley Robert
Assistant United States Attorney