# United States District Court
## for the Northern District of Oklahoma

---

Case No. 26-cr-117-JDR

---

UNITED STATES OF AMERICA,

*Plaintiff,*

*versus*

AARON CHASE SANDERS,

*Defendant.*

---

## OPINION

---

It is the "province and duty" of the judiciary "to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). When carrying out this duty in the context of a criminal trial, a court must, among other things, prepare instructions for the jury to use in its deliberations. These instructions must clearly and accurately state the governing law and provide the jury with an understanding of the applicable legal standards and factual disputes so that the jury may determine the defendant's innocence or guilt.

Given the importance of these instructions, it is perhaps unfortunate that, in many cases, jury instructions and the discussions concerning them are not easily accessible. An individual who wishes to review deliberations about a particular instruction may do so, but only by attending an instruction conference, requesting a transcript of judicial proceedings, or in some cases reviewing appellate proceedings where the instruction is discussed in detail. As a result, the reasons underlying a Court's instructions and the concerns raised about those instructions are not generally known.

No. 26-cr-117

The Court will depart from its common practice and, for two reasons, write an opinion about the jury instructions in this case. First, during the instruction conference, defense counsel suggested that the Court had already decided the question of Defendant Aaron Sanders's guilt and drafted instructions to remove that question from the province of the jury. Accusations that the Court intentionally or effectively removed the question of a defendant's guilt from the jury should be discussed openly, not solely behind courthouse doors. Second, Mr. Sanders's objections to the Court's instructions concerned a novel question of law that may arise in future cases. The Court is persuaded that, regardless of whether Mr. Sanders appeals his conviction, an opinion articulating the legal basis for the instructions in this case will benefit future litigants who address similar claims and defenses. Accordingly, this Opinion memorializes the Court's decision to overrule, in predominant part, Mr. Sanders's objections to the Court's instructions.

I

The Defendant, Aaron Chase Sanders, was charged with a single count of violating 18 U.S.C. § 2252A(a)(5)(B). That statute prohibits any person from knowingly possessing child pornography or knowingly accessing child pornography with the intent to view it.[1]

Mr. Sanders is former military police officer and disabled veteran who, after leaving the military, tried in vain to obtain employment as a law

---

[1] The Court uses "child pornography" as a shorthand reference for the materials prohibited under the statute. The subparagraph at issue, which does not criminalize the possession or viewing of *all* forms of child pornography, penalizes any person who "knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[.]" 18 U.S.C. § 2252A(a)(5)(B).

2

enforcement officer.[2] When his disability prevented him from working for law enforcement in an official capacity, he became inspired by Tim Tebow, Ashton Kutcher, Colorado Ped Patrol, and others who take steps to protect children from online exploitation. Mr. Sanders decided that he, too, would become an online advocate for children. His advocacy took a very specific form: He would go online, search for child pornography on applications such as Telegram and Twitter (now known as X), and report the groups and individuals sharing the unlawful content.[3] It is undisputed that, as a result of Mr. Sanders's activity, files depicting child pornography were found on his cellular phone.[4] And Mr. Sanders conceded at trial that he did, in fact, view child pornography. He argues, however, that his intent was not to view the child pornography—only to report it.

The Government, of course, painted a very different picture of Mr. Sanders. The precise details of the Government's argument and evidence are not significant for purposes of this opinion. The key point is that the Government argued that Mr. Sanders did "intend to view" child pornography and did, in fact, view it. As a result, at the close of Mr. Sanders's case, one of the primary factual disputes before the jury was whether Mr. Sanders had the intent necessary to violate 18 U.S.C. §2252A(a)(5)(B).

The Court had been provided with proposed jury instructions that the parties had largely agreed upon, but none of those instructions informed the jury how "intent" should be defined. *See* Dkts. 43, 45. The Court was persuaded that, because Mr. Sanders was charged with violating a dual-intent

---

[2] The statements in this paragraph summarize Mr. Sanders's testimony at trial. The Court takes no position on the truth or falsity of his testimony.

[3] Evidence of some of Mr. Sanders's communications with Telegram were admitted into evidence at trial.

[4] Mr. Sanders denied knowing that any files depicting child pornography were stored on his phone.

No. 26-cr-117

statute,[5] and because Mr. Sanders had brought the question of his intent directly into question, it would be necessary to instruct the jury on the legal standards governing Mr. Sanders's intent.

## II

The Court proposed three instructions on the mens rea requirements of the statute. First, the Court proposed a definition of "knowingly" as follows (the "Knowingly Instruction"):

> An act is done knowingly if the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of Mr. Sanders cannot be established merely by demonstrating that Mr. Sanders was negligent, careless, or foolish, knowledge can be inferred if Mr. Sanders deliberately blinded himself to the existence of a fact. Knowledge can be inferred if Mr. Sanders was aware of a high probability of the existence of the fact in question, unless he did not actually believe the fact in question.

> The mere presence of child pornography images in a computer's temporary cache file, by itself, is not sufficient to establish knowing possession of the images.

Dkt. 52 at 18.

Next, the Court proposed the following instruction on the meaning of "with intent" (the "Intent Instruction"):

> A person acts with intent to view child pornography if he acts with the purpose or will to view child pornography.

---

[5] Subsection (a)(5)(B) is an unusual statute because it prohibits both knowingly possessing child pornography and knowingly accessing child pornography with intent to view it. *See* 18 U.S.C. § 2252A(a)(5) (providing that any person who "knowingly possesses, or knowingly access with intent to view, any . . . material that contains an image of child pornography" that satisfies the interstate-commerce requirement shall be fined and imprisoned). The intent required to commit the offense of possession is different from the intent required to commit the offense of accessing child pornography.

4

An individual can act with more than one purpose.

To prove that Mr. Sanders accessed child pornography with intent to view it, the Government must prove beyond a reasonable doubt that viewing child pornography was one of the purposes of Mr. Sanders's conduct. It is not necessary for the Government to prove that viewing child pornography was the dominant or sole purpose for that conduct.

*Id.* at 19.

Finally, the Court entered the following instruction concerning the statutory affirmative defenses available under § 2252A (the "Affirmative Defense Instruction"):

The statute that Mr. Sanders is charged with violating, 18 U.S.C. § 2252A, provides for certain defenses that may apply when an individual is charged with violating Section [2]252A(a)(5). Specifically, an individual who (1) possesses fewer than three images of child pornography and (2) promptly, in good faith, without retaining or allowing any person other than a law enforcement agency to access any image or copy of an image, either (a) took reasonable steps to destroy each image, or (b) reported the matter to a law enforcement agency and afforded that agency access to each such image, has a defense to the crime charged. Mr. Sanders is not asserting this defense.

*Id.* at 20. Mr. Sanders objected to all three instructions. The Court overruled his objections to the Knowingly and Affirmative Defense Instructions and overruled, in part, his objection to the Intent Instruction .

A

The Court begins with the Knowingly Instruction, which was drawn in part from an agreed-upon instruction. *See* Dkt. 43 at 29; Dkt. 45 (indicating Mr. Sanders had "no objection" to the Government's instructions and requesting additional instructions). The Court modified the Government's proposed instruction to refer to Mr. Sanders by name, rather than as "the

No. 26-cr-117

defendant."[6] In addition, the Court added a paragraph specifying that the mere presence of prohibited images in a temporary cache file is not, by itself, sufficient to establish knowing possession of those images. *See* Dkt. 45 at 4 (requesting instruction that cached files are not sufficient). The Court then submitted the Knowingly Instruction to the parties for review.

Mr. Sanders objected, arguing that the Court should adopt the Tenth Circuit's pattern instruction rather than the Knowingly Instruction. But the first paragraph of the Knowingly Instruction is substantively identical to the pattern instruction. *Compare* Dkt. 52 at 18, *with Criminal Pattern Jury Instructions*, § 1.37 (2026 ed.). Mr. Sanders did not identify any substantive changes that would bring the Knowingly Instruction into greater legal alignment with the pattern instruction, and the Court could find none. Accordingly, the Court overruled Mr. Sanders's objection to the first paragraph of the instruction.[7]

For the second paragraph, Mr. Sanders agreed that possession of cached images is not sufficient to establish knowledge. But he asked the Court to go one step further and instruct the jury that knowing possession of a cached file cannot be established without evidence that the file was purposefully saved or downloaded. Dkt. 45 at 4. The case law does not support Mr. Sanders's request. In *United States v. Dobbs*, 629 F.3d 1199 (10th Cir.

---

[6] Although it is sometimes impractical do so in multi-defendant cases, the Court generally refers to defendants by name, addressing them as it would any other person who appears as a witness or party in a proceeding.

[7] Courts should use caution when adopting the deliberate-ignorance portion of this instruction. *See Criminal Pattern Jury Instructions*, § 1.37, comment (recognizing that the deliberate-ignorance instruction is "discouraged" and should be given only when the evidence indicates a defendant deliberately avoided learning all the facts). In this case, Mr. Sanders's testimony justified the inclusion of the deliberate-ignorance instruction. He testified that an AI-generated video was created and saved accidentally and without his knowledge and that he knew of civilian efforts to take down online child pornography but was unaware that online digital content can be stored to a computer's cache. The jury also heard expert computer forensic testimony of deleted applications on Mr. Sanders's iPhone.

No. 26-cr-117

2011),[8] the Tenth Circuit held that the defendant in that case could not be convicted of knowingly receiving two images depicting child pornography because there was no evidence that he had (1) seen the images on his monitor, or (2) conducted suggestive searches or visited child pornography websites prior to the creation of those images. *Dobbs*, 629 F.3d at 1207. *Dobbs* strongly suggests that knowledge of cached images can be established from a range of conduct such as searching for or viewing those images, and this conclusion is corroborated by other opinions from the Tenth Circuit. *Accord United States v. Bass*, 411 F.3d 1198, 1202 (10th Cir. 2005) (concluding that knowledge of images could be inferred from attempt to remove the images); *United States v. Traufield*, 768 F. App'x 802, 809 (10th Cir. 2019) (concluding that the jury could infer knowledge from affirmative solicitation of, access to, and deletion of images). The Court therefore rejected Mr. Sanders's request for a narrower instruction. The Court's instruction properly informed the jury that "something more" than cached images was needed to establish knowledge—without unduly cabining the evidence that the jury might use to find that "something more" exists.

B

The Court next turns to the Intent Instruction. Often, intent is not defined, and juries interpret that word in accordance with its ordinary and customary meaning. When it is defined, acting "with intent" is generally deemed to mean acting purposefully or willfully. *E.g., Apodaca v. United States*, 188 F.2d 932, 937 (10th Cir. 1951) (affirming judgment where jury was instructed that "intent is merely the purpose or willingness to commit the act charged"). But this case is unusual because Mr. Sanders acknowledged that viewing the prohibited images was a necessary precursor to reporting them. Although he denied having "intent" to view the images, he conceded that viewing the images was a step that he had to take—and did take—in

---

[8] Unlike this case, *Dobbs* involved the knowing *receipt* of child pornography. The opinion is instructive notwithstanding that difference.

furtherance of his goal of having those images taken down. He argued during the instruction conference that, to the extent he had any intent to view prohibited images, that intent was only ancillary or incidental to his overriding purpose.

The Court searched for cases addressing a similar factual scenario and came up short. It did, however, locate another situation where more than one "intent" was at issue in a criminal case. In *United States v. Perkins*, 948 F.3d 936 (8th Cir. 2020), the Eighth Circuit considered an individual who crossed state lines and subsequently engaged in sexual activity with a minor. The question was whether the defendant had crossed state lines "with the intent" to engage in illegal sexual activity, a required element of the charged offense. *Id.* at 938-39 (discussing 18 U.S.C. § 2241(c)). The Court of Appeals recognized that the defendant may have had more than one "intent" when he crossed state lines and held that the intent requirement could be satisfied by proof that the illicit behavior was *one* of the motivating purposes, even if it was not the *sole* or *dominant* purpose. *Id.* This Court crafted its Intent Instruction based, in part, on the language in *Perkins*.

Mr. Sanders objected to the Intent Instruction. His defense counsel argued that the Court had preemptively resolved the question of Mr. Sanders's guilt and had prepared an instruction that effectively removed the question of intent from the jury. He asked the Court to withdraw the instruction or, at a minimum, add language indicating that a desire or end must be more than "merely incidental" to qualify as intent. *See id.* (agreeing that "sexual activity must be more than merely incidental to the trip across state lines").

The Court overruled Mr. Sanders's objection that the Intent Instruction should be withdrawn. Based on the evidence, the jury could have done one of three things: It could have rejected Mr. Sanders's testimony entirely and believed he intended solely to view child pornography, and that his reports were nothing more than a front; it could have accepted Mr. Sanders's testimony and believed he had no intention to view the child pornography he

reported; or it could have believed that Mr. Sanders was motivated in part by a desire to view child pornography and in part by a desire to report it. In the first two scenarios, no instruction on intent would be required. In the third, however, the jury would need guidance about what "intent" means when more than one "intent" is at issue. The language in *Perkins* provides that guidance, and the Intent Instruction provided the jury with the legal framework necessary to render a verdict if, in the jury's estimation, the evidence showed that Mr. Sanders had more than one intent.

The Court overruled Mr. Adams's contention that, at a minimum, the Court should instruct the jury that intent to view must be "more than merely incidental" to satisfy § 2252A(a)(5). Although the "more than incidental" language does appear in *Perkins* and other cases addressing crimes involving interstate transportation and travel, those cases are not precisely on point. *Id.*; *see Long v. United States*, 160 F.2d 706 (10th Cir. 1947); *see also United States v. Duffin*, 844 F.3d 786 (8th Cir. 2016). In each of these cases, the charged conduct would not constitute a federal crime without the jurisdictional "hook" of intent to commit a crime while crossing or causing something to cross state lines. In general, an adult who has sex with a minor (as was the case in *Perkins*) commits a state crime, not a federal one.[9] It is the act of crossing state lines *with unlawful intent* that gives rise to a federal crime and permits the exercise of federal jurisdiction. *See Long*, 160 F.3d at 709 ("If the sole purpose of the interstate journey is legitimate, a purely incidental intent to have intercourse en route is not a federal offense."). And federal jurisdiction depends on the contemporaneous existence of the intent to commit a crime and the interstate travel or transport. *See United States v. Hoffman*, 626 F.3d 993, 996 (8th Cir. 2010) (requiring the mens rea and actus reus to coincide).

Not so here. The federal government exercises jurisdiction over violations of § 2252A(a)(5)(B) because the prohibited images themselves are, in

---

[9] There are, of course, exceptions to this general rule. *See, e.g.,* 18 U.S.C. § 1153.

some way, connected to interstate commerce. *See* 18 U.S.C. § 2252A(a)(5)(B) (setting forth required links between prohibited images and interstate commerce). So long as an individual knowingly possesses images that satisfy the jurisdictional requirements of § 2252A(a)(5)(B), there is no risk that the individual will fall outside the jurisdictional reach of that statute based on the relative significance of his "intent to view" those images. The "not incidental" language is necessary in cases where the only basis for federal jurisdiction is the party's intent when crossing (or transporting people or things across) state lines. The Court is not persuaded that it is also necessary here.

In addition, the "not incidental" language is not warranted here because of the type of crime at issue. "In a sense, every viewing of child pornography is a repetition of the victim's abuse." *Paroline v. United States*, 572 U.S. 434, 457 (2014). Congress recognized this when it amended § 2252A to prohibit knowingly accessing child pornography with the intent to view it. *See* PROSECUTION—CHILD PORNOGRAPHY CASES, PL 110–358, October 8, 2008, 122 Stat 4001 (providing that "the distribution of child pornography images revictimizes the child each time the image is viewed"). The language and purpose of § 2252A(a)(5)(B) suggest that a person violates that subparagraph when he knowingly possesses child pornography with intent to view it, regardless of whether he does so in furtherance of some other overriding purpose, noble or otherwise.[10] It is the Court's opinion that § 2252A(a)(5)(B) criminalizes knowing possession of child pornography with intent to view it, no matter how great or small that intent may be in relation to a defendant's other purposes. The Court therefore overruled Mr. Sanders's request for an instruction that § 2252A(a)(5)(B) requires more than incidental intent to view prohibited materials.

––––––––––––––––––––

[10] Not everyone who accesses child pornography can claim altruistic motives. An individual who downloads images with the intent to print and sell them, viewing them only to confirm that the images are, in fact, child pornography, could raise the same argument that Mr. Sanders makes here.

No. 26-cr-117

Although the Court rejected Mr. Sanders's proposed modifications to the Intent Instruction, it was cognizant of his concern that the instructions must not suggest that the intent element had been decided by the Court. To address this concern, the Court amended its instruction to include the following: "Whether Mr. Sanders had the intent to view child pornography is a question of fact for you, the jury, to determine." Dkt. 57 at 18. The Court overruled Mr. Sanders's objections in all other respects.

### C

This brings the Court to the final challenged instruction, the Affirmative Defense Instruction. Whether Mr. Sanders intended to invite jury nullification or not—and the Court takes no position on this—the fact remains that he testified that protecting children should be above the law. He argued that he was a "vigilante" who undertook to do the important work that the Government could not, or would not, do. Mr. Sanders's arguments are, to say the least, problematic, and they created a risk that the jury might find Mr. Sanders innocent not because he was legally innocent, but because those who report child pornography should not be punished. The Court included the affirmative defense in § 2252A(d) to present the jury with an accurate statement of the conduct that is—and is not—prohibited by statute. The Court doubts this instruction would be necessary or should be included in every case involving a violation of § 2252A(a)(5)(B), but based on the testimony of Mr. Sanders, the Court was persuaded that its inclusion was proper here. The Court overruled Mr. Sanders's objections to the Affirmative Defense Instruction.

### III

The Court concludes that the proposed instructions, taken as a whole, adequately informed the jury on the law so that the jury could perform its factfinding role. *McKenzie v. Benton*, 388 F.3d 1342, 1348 (10th Cir. 2004). The Court amended those instructions to specifically provide that the jury, not the Court, was tasked with determining Mr. Sanders's intent. *See* Dkt.

No. 26-cr-117

57. With that exception, the Court overruled Mr. Sanders's objections to the Court's proposed instructions.

DATED this 10th day of August 2026.

_____
JOHN D. RUSSELL
*United States District Judge*